**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **P.P. o/b/o T.N., a minor,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 5:21-cv-00345-CHW** |
| | : | |
| **COMMISSIONER OF SOCIAL** | : | **Social Security Appeal** |
| **SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## ORDER

      This is a review of a final decision of the Commissioner of Social Security denying P.P.'s application for benefits filed on behalf of T.N., a minor. The parties consented to have a United States Magistrate Judge conduct proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals.

      Because the ALJ did not adequately explain the weight given to important evidence, and because substantial evidence does not support the Commissioner's decision, it is **ORDERED** that this case is **REMANDED** to the Commissioner for a reevaluation of the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

      Claimant T.N. is a minor born in August 2007. Plaintiff, the claimant's grandmother and legal guardian, applied for Title XVI disability benefits on the claimant's behalf in September 2019, alleging disability due to what she described as attention-deficit hyperactivity disorder (ADHD), flat feet, and a twisted femur. (R. 75). After the application was denied initially and on

reconsideration at the state agency level of review (Exs. 2B, 4B), Plaintiff requested further review before an administrative law judge (ALJ).

At a telephonic hearing before the ALJ in November 2020, counsel for claimant clarified that the claimant's femur condition is the result of a congenital hip deformity. (R. 30–31). Counsel emphasized, however, that the claimant's asserted functional impairments chiefly are mental. The claimant suffers from ADHD, or perhaps autism or an autism-spectrum disorder, with the result that the claimant has particular difficulty in the domains of acquiring and using information, attending and completing tasks, and possibly interacting and relating with others. (R. 30–31).

Available for the ALJ's review, in addition to the claimant's medical records which are discussed below, were educational records pertaining to the claimant's psychological functioning. A psychological study conducted in October 2020 by Brian Blann, Ed. S., found that the claimant was "easily confused by 2-3 step directives," had "trouble processing orally presented information as well as gaining knowledge from assignments that he has to read for himself," and had "much difficulty understanding the nature of novel tasks given to him." (R. 291–293).

Additionally, behavioral forms completed by the claimant's teachers indicated that the claimant had significant functional difficulties, particularly in the domains of acquiring and using information and attending and completing tasks. (R. 178–79) (Christy Amerson); (R. 256–57) (Monica Johnson). Plaintiff also arranged for a consultant, Elizabeth White, Ed. D., to review the claimant's records, and Ms. White initially concluded that the claimant had marked limitations in the domains of acquiring and using information, attending and completing tasks, moving and manipulating objects, and caring for himself. (R. 341). Finally, state agency medical reviewers concluded that the claimant would have a marked limitation in at least the domain of attending and completing tasks. (R. 54, 67).

Upon review of these records, the ALJ concluded that the claimant had no marked limitation in any functional domain. (R. 18). In so finding, the ALJ purported to credit the teacher behavioral forms, which the ALJ found to be "mostly persuasive," along with the opinions of the state agency medical reviewers, which the ALJ also found to be "persuasive." (R. 21). The ALJ mischaracterized the import of Ms. White's opinion, stating that the report "falls short of finding the child disabled" and that "Ms. White … does not find the child disabled."[1] (R. 21). Similarly, the ALJ did not interpret the import of Mr. Blann's October 2020 psychological study, except to say that Mr. Blann "did not specifically find the claimant disabled." (R. 21).

The ALJ was required to "provide sufficient detail so that any subsequent reviewers can understand how they made their findings." SSR 09-1P. *See also Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational"). Because the ALJ failed to meet that standard, and because new evidence that Plaintiff submitted to the Appeals Council further undermines the ALJ's decision, Plaintiff's case is remanded.

### STANDARD OF REVIEW

District courts have a limited role when reviewing claims brought under the Social Security Act. Judicial review of the Commissioner's decisions is restricted to a determination of whether a decision is supported by substantial evidence, and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more

---

[1] As discussed below, a finding of disability under the functional equivalence inquiry requires marked limitations in two domains. Ms. White initially proposed that the claimant had marked limitations in four domains. (R. 341). White's follow-up record reiterated that the claimant had marked limitations in at least two domains. (R. 496).

than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Consequently, a Court's role in reviewing claims brought under the Social Security Act is quite narrow.

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, or substitute their judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); s*ee also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. *Id.*

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no . . . presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards, or to provide a sufficient factual basis for the court to determine whether the correct legal standards have been followed, is grounds for reversal. *Id.*

## EVALUATION OF DISABILITY

Persons under the age of 18 are disabled for purposes of receiving Title XVI benefits if they have "a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

When analyzing the issue of disability for persons under the age of 18, the ALJ uses a three-step sequential evaluation procedure. 20 C.F.R. § 416.924(a). At step one, the ALJ determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). At step two, if the child is not engaged in substantial gainful activity, then the ALJ determines whether the child has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.924(c). At step three, the ALJ determines whether the child's impairment or combination of impairments meets or is medically or functionally equal to one of the listed impairments, and otherwise satisfies the relevant duration requirement. 20 C.F.R. § 416.924(d).

To determine whether the child's impairment functionally equals a listed impairment, the ALJ must consider six "domains," which are "broad areas of functioning intended to capture all of what a child can and cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To satisfy the "functional equivalence" standard, the child must have either "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

## MEDICAL RECORD

The available medical record begins in January 2019, when claimant sought care from Dr. Prabhdeep Brar at Kids First Pediatrics. (R. 361). Dr. Brar treated claimant's attention-deficit hyperactivity disorder (ADHD) with the medication Concerta, but Dr. Brar also referred the claimant to the River Edge Behavioral Health Center (River Edge) for an autism consultation. There, the claimant treated with Dr. James J. Logan who recommended that the claimant medicate with both Concerta and Seroquel. (R. 346–47).

In March 2019, the claimant reported to The Medical Center, Navicent Health, for care relating to auditory hallucinations instructing the claimant either "to hit himself" (R. 390), or to "kill everyone he loves." (R. 396). The record indicates that the claimant's dosage of Concerta (methylphenidate), a stimulant, was increased from 36 mg to 54 mg daily. (R. 425).

Subsequently, in April 2019, the claimant was admitted to the Crescent Pines Hospital for six days due to renewed auditory hallucinations, now instructing the claimant to harm his cousin, for whom the Plaintiff also serves as a caregiver. (R. 350). The claimant participated in therapy while hospitalized, and he was instructed to continue treatment with Seroquel and Concerta upon discharge. (R. 350). A follow-up record from Dr. Prabhdeep Brar, the claimant's pediatrician, indicates that psychosis was ruled out as the source of claimant's hallucinations. (R. 355). By May 2019, Dr. Brar reported that the claimant had "no current concerns" at school, that his "grades [were] good," and that claimant had a "good appetite" and "sleeps fine." (R. 353).

In June 2019, the claimant sought physical therapy for a congenital leg condition causing pain on ambulation. Specifically, the record indicates that the claimant suffers from "bilat[eral] congenital pes planus and congenital anteversion of [the] femur." (R. 367). The claimant was instructed to begin a home exercise program, *see* (R. 369), which he was able to perform "without

difficulty." (R. 365). By July 2019, the claimant had "made solid progress in strength, [range of motion], and function," (R. 365), and he was able to "engag[e] in prolonged running with minimal to no pain/difficulty." (R. 363).

Contemporaneously, the claimant treated at the Community Mental Health Center where he denied further auditory hallucinations and initially demonstrated good memory, fair insight and judgment, and average intelligence, but also exhibited concentration problems associated with restlessness. (R. 384). The record indicates that the claimant experimented with discontinuing his Concerta treatment over the summer, and an increase in his Seroquel dosage initially resulted in "some improvement." (R. 379). By September 2019, the claimant showed signs of involuntary twitching — tardive dyskinesia or TD — seemingly associated with the Seroquel treatment. (R. 372). As a result, the claimant's Seroquel prescription was cancelled, his Concerta prescription was renewed, and the claimant was prescribed gabapentin for sleep assistance. (R. 373). A brain MRI obtained in October 2019 revealed no clear etiology for the claimant's twitching, (R. 454–55), although it "did show white matter changes around the periventricular … and centrum" regions of the brain. (R. 487). Meanwhile, further records from the Community Mental Health Center indicate that the claimant's medication changes were not successful: Records from June through October 2019 describe the claimant as "easily distracted," possessing "grossly impaired" insight and judgment, having a "poverty of thoughts," and suffering from functional problems both at home and at school. (R. 372–82).

The claimant also treated, in late 2019, with Dr. Jeremy Richter, an orthopedic surgeon at the Hughston Clinic, where he demonstrated "full range of motion of joints, joints stable with no tenderness," and "[w]ell maintained strength throughout." (R. 465). The claimant did, however, report moderate pain that was "worse when he walks around for extended periods of time" and

"at nighttime after being up on it all day." (R. 461). The record indicates that during this period, the claimant continued to treat with Concerta, along with clonidine and quetiapine. (R. 462).

Finally, records from 2020 show that the claimant continued to struggle with sleep even while treating with gabapentin. (R. 467) ("Sleep: Fair"). Treatment with Concerta or Focalin, though, appears to have alleviated the claimant's twitching. *See* (R. 467) ("TD [side effects] are mostly gone now"). The last available medical note, dating from October 2020, indicates that claimant was "do[ing] well" upon treatment with Focalin and gabapentin with "no side effects," although that same note, which records the claimant's treatment at the Community Mental Health Center, again describes the claimant as having "grossly impaired" insight and judgment," being "easily distracted," and having a "poverty of thoughts." (R. 492–93).

## DISABILITY EVALUATION IN THIS CASE

Following the applicable three-step procedure for childhood disability determinations, the reviewing ALJ issued an unfavorable decision in January 2021. At step one, the ALJ found that the claimant had not engaged in substantial gainful activity since at least April 2019, the application date. (R. 16). At step two, the ALJ found that the claimant suffered from the following severe impairments: "autism spectrum disorder, Asperger's syndrome, disruptive mood dysregulation disorder, attention-deficit hyperactivity disorder (ADHD), affective mood disorder and right hip congenital deformity." (R. 16).

Finally, at step three, the ALJ found that the claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, nor did he have an impairment or combination of impairments that functionally equaled the listings. (R. 16–17) In making the latter determination, the ALJ considered the six domains of functioning and determined that the claimant had: (1) a less

than marked limitation in domain of acquiring and using information; (2) a less than marked limitation in domain of attending and completing tasks; (3) a less than marked limitation in the domain of interacting and relating with others; (4) a less than marked limitation in domain of manipulating objects; (5) a less than marked limitation in domain of caring for oneself; and (6) a less than marked limitation in the domain of health and physical well-being. (R. 17). Based on these domain findings, the ALJ concluded that the claimant was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff raises four grounds for relief that are considered together herein. The four grounds, as Plaintiff formulates them, are as follows: (1) the ALJ inadequately assessed the opinions of the claimant's teachers and of Ms. Elizabeth White, Ed. D., a consultant; (2) the ALJ inadequately assessed the opinions of the state agency medical reviewers, (3) the ALJ failed to consider other school evidence, including an October 2020 psychological study conducted by Brian Blann, Ed. S., and (4) the Appeals Council erred by not further reviewing the case in light of additional evidence from Ms. White.

Plaintiff's first three arguments all raise essentially the same point, and they warrant a remand. All of the above-named sources found that the claimant suffered from some degree of marked limitation in the six domains of functioning. The claimant's teachers (Christy Amerson and Monica Johnson) indicated that the claimant had significant limitations in the domains of acquiring and using information, and of attending and completing tasks. (R. 178–79, 256–57). The state agency medical reviewers likewise found that the claimant was markedly limited in at least the domain of acquiring and using information. (R. 54, 67). Ms. White indicated that, on review of the claimant's records, she believed the claimant was markedly limited in four domains of

functioning. (R. 341). Finally, although Mr. Blann did not frame his findings in his October 2020 psychological study in terms of the six functional domains, Blann's report indicates that Plaintiff has concentration difficulties, as well as difficulties acquiring information provided in both written and oral form. (R. 291–293).

The ALJ mischaracterized the evidence from Ms. White and Mr. Blann as indicating that the claimant was not disabled, and that mischaracterization alone gives cause for a remand. *See Storey v. Comm'r*, 776 F. App'x 628, 636 (11th Cir. 2019). Additionally, the ALJ purported to credit the opinions of the claimant's teachers and the state agency medical reviewers, but the ALJ's findings materially differ: The ALJ concluded that the claimant had no marked limitation in any domain of functioning. (R. 18). The ALJ's failure to build a logical bridge between the evidence she credited and the conclusions she reached additionally warrants a remand. *See Angelita O. v. Comm'r*, 2021 WL 4146085 at *18 (N.D. Ga. Sept. 13, 2021).

Furthermore, it is not clear that substantial evidence supports the ALJ's ultimate conclusion that the claimant is not disabled. The state agency medical reviewers found that the claimant suffered from a marked limitation in only one domain, rather than the two required for functional–equivalence disability, but these reviewers' opinions cannot, on their own, amount to substantial evidence. *See Storey*, 776 F. App'x at 635 ("The opinions of nonexamining, reviewing physicians … standing alone do not constitute substantial evidence"). It is possible that substantial evidence might be found in the claimant's medical records, but the ALJ did not articulate her rationale for such a finding, and the Court cannot offer post-hoc rationalizations for the ALJ's conclusions. *See Howze v. Comm'r*, 2022 WL 152236 at *3 (11th Cir. 2022) (citing *SEC v. Chenery Corp.*, 67 S. Ct. 1575, 1577 (1947)).

10

Finally, the additional evidence from Ms. White first submitted to the Appeals Council (Doc. 28-1, pp. 3–5) was not "new" or "material" because the evidence merely reiterates some of White's earlier conclusions while also referencing previously available educational records for support. *See Washington v. Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) ("the Appeals Council must consider new, material, and chronologically relevant evidence"). Nevertheless, the additional evidence further illustrates the disconnect between, on the one hand, the ALJ's findings of no marked impairment at the six functional domains, and on the other hand, the conflicting opinion evidence which the ALJ purported to credit. In particular, the additional evidence from Ms. White makes clear that the ALJ mischaracterized White's earlier records as "not find[ing] the child disabled," or as "fall[ing] short of finding the child disabled." (R. 20–21). On remand, therefore, the Commissioner should carefully consider White's February 2021 statement when reconsidering the available medical and educational evidence pertaining to the claimant's functionality.

## CONCLUSION

For the reasons discussed herein, it is hereby **ORDERED** that the Commissioner's decision in this case is **REMANDED** for a reconsideration of the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

**SO ORDERED**, this 5th day of October, 2022.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge